FILED

2021 Sep-27  PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| FELICIA HENLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 7:20-cv-00134-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Felicia Henley ("Henley"), who the Social Security Administration ("SSA") previously found to be disabled, seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of the Commissioner of the SSA ("Commissioner")'s final decision, that as of March 1, 2018, she is no longer disabled and therefore ineligible for continued benefits. (Doc. 1). Henley timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED AND REMANDED**.

### I. Factual and Procedural History

In a decision dated April 21, 2016, the Commissioner found Henley disabled beginning September 7, 2013. (Tr. 15, 73). However, on March 13, 2018, the Commissioner determined Henley experienced medical improvement and her disability had ceased on March 1, 2018. (Tr.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

57-75).  On March 19, 2018, Henley filed a written request for review of the cessation decision. (Tr. 78-81).

An ALJ held an administrative hearing, and on April 8, 2019, issued an unfavorable decision finding medical improvement, that Henley's disability ceased on March 1, 2018, and that she had not become disabled again since that date.  (Tr. 12-25, 31-56).  On January 7, 2020, the Appeals Council denied Henley's request for review.  (Tr. 1-6).   On January 29, 2020, Henley filed this action seeking review of the Commissioner's decision. (Doc. 1).

Henley was forty years old on March 1, 2018, the date the ALJ determined her disability ended.  (Tr. 25).  She has a high school education and previously worked as an assembler, waitress, and cleaner.  (Tr. 49-54).

When Henley was found disabled on April 21, 2016, with an onset date of September 7, 2013 (tr. 57), the ALJ found severe impairments of carpal tunnel syndrome, stage 3 breast cancer, and polyneuropathy secondary to chemotherapy.  (Tr. 62).  On March 13, 2018, when the Disability Determination Service determined Henley's disability ceased on March 1, 2018, it explained medical improvement had occurred based on her cancer being in remission.  (Tr. 96-97).

During the subsequent ALJ hearing, Henley alleged additional complaints cause her limitations, including daily headaches, anxiety, and depression.  (Tr. 42-45).  She also reported physical limitations due to her past cancer treatment and her carpel tunnel syndrome.  (*Id.*).  Henley alleged she was further limited due to back pain and unable to drive.  (Tr. 43-44).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability

function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

The Social Security regulations provide an eight-step sequential evaluation process for determining whether a claimant's disability has ceased. *See* 20 C.F.R. § 404.1594. In conducting

---

Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the eight-step evaluation process, the ALJ considers first whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). The ALJ next considers whether the claimant has an impairment or combination of impairments that meets or equals the criteria for one of the listed impairments. *Id.* § 404.1594(f)(2). At step three, the ALJ considers whether there has been a medical improvement. *Id.* § 404.1594(f)(3). Then at step four, the ALJ considers whether the improvement is related to the claimant's ability to work. *Id.* § 404.1594(f)(4). At step five, the ALJ considers whether any exceptions to medical improvement apply. *Id.* § 404.1594(f)(5). At step six, the ALJ analyzes whether the claimant's current impairments in combination are severe. *Id.* § 404.1594(f)(6). If the ALJ determines that the claimant's impairments are severe, then step seven requires that the judge evaluate the claimant's residual functional capacity to engage in substantial gainful activity by first considering whether she has the ability to perform past relevant work. *Id.* § 404.1594(f)(7). If the claimant cannot do her past relevant work, step eight calls for the ALJ to consider whether, given her residual functional capacity, the claimant is able to do other work in the national economy. *Id.* § 404.1594(f)(8). *See Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 954 n.4 (11th Cir. 2016) (citing 20 C.F.R. § 404.1594(f)).

## IV. Findings of the Administrative Law Judge

Prior to Step 1, the ALJ noted the most recent favorable medical decision finding Henley disabled was the decision dated April 21, 2016. (Tr. 17). This is the "comparable point decision" or "CPD." (*Id.*). The ALJ then recognized that, at the time of the CPD, Henley had the following medically determinable impairments: carpal tunnel syndrome, stage 3 breast cancer, and polyneuropathy (secondary to the effects of chemotherapy). (*Id.*). These impairments were found to result in an RFC that rendered Henley unable to engage in substantial work-related physical

activities in a work setting on a regular and continuable basis. (*Id.*). She was unable to perform or tolerate work activity for a full eight-hour workday, 40-hour workweek, or an equivalent work schedule. (*Id.*).

At Step 1, the ALJ found, through the date of the decision, Henley had not engaged in substantial gainful activity. (Tr. 17). At Step 2, the ALJ found that, since March 1, 2018, Henley has the following medically determinable impairments: status post breast cancer, posttraumatic stress disorder, obesity, carpal tunnel syndrome, polyneuropathy, and migraine headaches. (Tr. 17-18). Prior to proceeding to Step 3, the ALJ determined Henley has not had an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings"). (Tr. 18-20).

At Step 3, the ALJ determined medical improvement occurred on March 1, 2018. (Tr. 20). The ALJ then found that, since March 1, 2018, the impairments present at the time of the CPD decreased in medical severity to the point where Henley has had the RFC to perform light work, occasionally climbing ramps and stairs, stopping, kneeling, crawling, and crouching. (Tr. 20-21). She could never climb ladders, ropes or scaffolds, but could frequently reach overhead with her bilateral extremities and could frequently handle, finger, and feel with bilateral upper extremities. (*Id.*). She can have only occasional exposure to extremes of cold as well as vibrations. (*Id.*) She could have no exposure to hazards such as unprotected heights and dangerous machinery. (*Id.*).

At Step 4, the ALJ found Henley's medical improvement was related to her ability to work because it resulted in an increase in her RFC. (Tr. 21). The ALJ did not find any exceptions to the medical improvement.

At Step 6, the ALJ found Henley has continued to have a severe impairment or combination of impairments. (Tr. 21). The ALJ proceeded to Step 7, finding that, based on Henley's

impairments since March 1, 2018, Henley has had the RFC to perform light work as defined in 20 C.F.R. §404.1567(b) except occasionally climbing ramps and stairs, stooping, kneeling, crawling, and crouching. (Tr. 21-23). She could never climb ladders, ropes or scaffolds, but could frequently reach overhead with her bilateral extremities and could frequently handle, finger, and feel with the bilateral upper extremities. (*Id.*). She can have only occasional exposure to extremes of cold as well as vibrations. (*Id.*). She could have no exposure to hazards such as unprotected heights and dangerous machinery. (*Id.*). She would be able to understand, remember, and carry out simple instructions and tasks for two-hour blocks of time, could tolerate changes in the workplace that are infrequent and gradually introduced, and could have occasional work-related interaction with supervisors, coworkers, and the general public. (*Id.*). The ALJ then found that, since March 1, 2018, Henley has been unable to perform her past relevant work. (Tr. 23).

At Step 8, the ALJ found that, since March 1, 2018, considering Henley's age, education, work experience, and RFC, based on the impairments present since March 1, 2018, Henley has been able to perform a significant number of jobs in the national economy. (Tr. 24-25). Accordingly, the ALJ concluded Henley's disability ended on March 1, 2018, and Henley has not been disabled again since that date. (Tr. 25).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the

[Commissioner]." *Id.* (citation omitted).

Henley challenges the Commissioner's decision on several specific grounds. (Doc. 13).

Specifically, Henley outlines the following four issues:

(1) The determination of cessation is not based on substantial evidence showing medical improvement related to ability to work.

(2) The ALJ erred in failing to consider the treating neurologist, Dr. Daniel C. Pott's opinion.

(3) The ALJ erred in failing to properly consider the severity of Henley's PTSD, which was identified as a severe impairment.

(4) The ALJ erred in failing to properly consider the severity of Henley's carpal tunnel syndrome.

(*Id.* at 2). In its response, the Commissioner characterizes Henley's issues as follows:

(1) Does substantial evidence support the ALJ's determination that [Henley] experienced medical improvement and was no longer disabled?

(2) Did the ALJ properly decline to provide an analysis of how she considered Dr. Potts' statement on an issue reserved to the Commissioner?

(Doc. 14 at 2).

Having reviewed the parties' briefs and the voluminous medical records, the undersigned has determined it most prudent to consider the alleged error relating to Dr. Potts' opinion first, then proceed and consider whether the ALJ's conclusion that Henley was no longer disabled on March 1, 2018, based on the new RFC finding, is supported by substantial evidence and whether the ALJ committed any errors in making that determination.

### A. Dr. Potts' Opinion is on Matter Reserved to the Commissioner

In March 2018, Dr. Daniel C. Potts, Henley's neurologist at the VA Medical Center, opined that "[t]he veteran is unable to gain employment due to her military service-connected migraine headaches and PTSD. Because of her conditions she is not able to do physical or sedentary work

in such a way as would provide sustenance for herself or her family.  Therefore, she must rely on social security disability due to the severity of her health conditions." (Tr. 1563, 1717).

In determining whether an individual is "disabled" and entitled to benefits is the ultimate question and reserved to the Commissioner.  20 C.F.R. §404.1520b(c)(3).  Because of this, the ALJ did not have to recognize or provide any analysis on this statement.  *See* 20 C.F.R. § 404.1520b(c).  Nevertheless, this does not excuse the ALJ from reviewing and considering Dr. Potts' treatment notes, which will be discussed more fully below.

## B. Whether Substantial Evidence Supports the ALJ's Determination that Henley Experienced Medial Improvement and Was No Longer Disabled

In finding that medial improvement occurred on March 1, 2018, the ALJ cites medical records from oncologist, Dr. David L. Hinton based on Henley's May 21, 2018 appointment.  (Tr. 20 (citing tr. 2036-54)).  Dr. Hinton notes Henley "has done fairly well over the last three months" and that she has "[e]qual strength in all four extremities." (Tr. 2039).  Dr. Hinton concludes Henley had a history of breast cancer, but NED (no evidence of disease).  (Tr. 2040).  The ALJ specifically referenced Dr. Hinton's May 21, 2018 findings in determining that medial improvement had occurred on March 1, 2018.  (Tr. 20).

There is substantial evidence to support the ALJ's conclusion that Henley's previous impairment of stage III breast cancer had improved.  Henley does not challenge this finding. Additionally, while it was proper for the ALJ to consider records from Henley's May 21, 2018 appointment with her oncologist, this record is only a snap shot.  The ultimate question is whether there is substantial evidence to support the ALJ's determination that Henley was no longer disabled on and after March 1, 2018, based on her other impairments, and whether the ALJ erred in making any findings supporting that conclusion.

### 1.   Medical Records from Dr. Potts and Migraines

At her previous appointment with oncologist Dr. Hinton on February 15, 2018, Henley reported she had not felt well, her energy level was fair, she felt weak sometimes, and was having a lot of problems with low back pain radiating down her legs. (Tr. 1390). Dr. Hinton ordered a bone scan due to the back and leg pain. (Tr. 1391). These records are substantiated by treatment notes from Henley's neurologist, Dr. Potts, where in February 2018, Henley reported her headaches were getting worse despite medication compliance. (Tr. 1043). In response, Dr. Potts increased Henley's dosage of Topamax (to treat her migraines). (*Id.*). The medical records from her neurologist show that, despite breast cancer remission, Henley continued to experience medical issues.

Henley visited her neurologist Dr. Potts again on March 16, 2018. (Tr. 1560). Henley reported headaches that were getting worse and having to wear dark glasses due to light sensitivity. (Tr. 1560, 1714, 1922). During physical examination, she appeared to be in pain despite wearing dark glasses. (Tr. 1561, 1715, 1923). Her recent and remote memory were fair and concentration and attention were somewhat decreased. A neurological exam revealed photophobia and a motor exam revealed "breakaway-type weakness in the lower extremities due to back pain." (*Id.*). Her gait was somewhat antalgic (developed in a way to avoid pain). (*Id.*). Dr. Potts diagnosed chronic migraine headaches, memory loss, insomnia, and low back pain. (*Id.*). He explained: "[i]t sounds like the veteran's wartime experiences and subsequent PTSD have a lot to do with her headaches. She is not better." (*Id.*). Dr. Potts also stated he believed her memory loss was "likely mostly related to dealing with chronic pain, plus PTSD." (*Id.*).

The Disability Hearing Officer considered the March 16, 2018 Dr. Potts visit at length and concluded it warranted "some weight because the doctor is a treating source at the VA and

[Henley] is 70 percent service connected disabled." (Tr. 96). However, the ALJ did not address Dr. Potts' treatment notes in the unfavorable decision. (Tr. 12-30). Of course, an ALJ does not have to point to or describe every piece of medical evidence, but these are records from Henley's neurologist less than two weeks after the date the ALJ found her no longer disabled. The ALJ is evaluating severe impairments including migraines, radiating back pain, and service-connected PTSD. This omission is glaring. It is not the type of evidence that "is inherently neither valuable nor persuasive to the issue of whether [Henley] is disabled" such that it can be ignored. 20 C.F.R. §404.1520b(c)(1)-(3).

Although the ALJ found migraine headaches to be a medically determinable impairment (tr. 18), there is not much discussion of how Henley's migraine headaches affect her ability to work. In the decision dated April 9, 2019, the ALJ notes Henley has prescriptions for rizatriptan, gabapentin, and ibuprofen for migraines and headaches. (Tr. 22). The ALJ then states "[t]his treatment should minimize any impairment due to migraine headaches." (Tr. 22). As discussed above, treatment notes from March 16, 2018, indicate Henley continued to suffer from migraines. (Tr. 1390-91). Dr. Potts ordered a brain MRI and prescribed gabapentin. (Tr. 1560-64, 1414-17, 1922-25). When Henley returned to Dr. Potts on July 6, 2018, she reported headaches twice a week, limited sleep, and back pain and stiffness. (Tr. 1996-99). She continued to wear dark glasses due to photophobia. (*Id.*). The ALJ points to nothing in the record to support the conclusion that Henley's migraines were controlled. The medical evidence supports a contrary conclusion. Rizatriptan is not a preventative migraine mediation. It is abortive, as indicated in Dr. Pott's records. (Tr. 890). Prescribing such a medication shows that Henley's migraines were not under control, but still occurring. Furthermore, Henley continued to report migraine and headache pain, despite being prescribed medication. (Tr. 1924-26, 1989, 1994, 2021, 2072). The records indicate

Henley's migraines were not controlled, and the ALJ's speculation otherwise is not supported by substantial evidence.  On remand, the ALJ should consider Dr. Potts' treatment notes and should reconsider how Henley's migraines (and the medication she takes for those migraines) impact her ability to work.

### 2.  Carpel Tunnel Syndrome

Despite finding Henley's carpal tunnel syndrome to be a severe impairment (tr. 17), the ALJ included in the RFC that Henley could, "frequently reach overhead with her bilateral extremities, and could frequently handle, finger, and feel with the bilateral upper extremities." (Tr. 20-21).

On February 29, 2016, nerve conduction studies revealed Henley's bilateral carpal tunnel syndrome. (Tr. 846-848, 855-857).  On March 10, 2016, at the request of the Social Security Administration, Henley underwent a consultative examination with Dr. Julia Boothe.  The examination revealed a reduced range of motion throughout her cervical spine, dorsolumbar spine, both hips, both knees, both ankles, both shoulders, both elbow and forearms, and both wrists, with moderate dexterity and severe weakness in grip strength. (Tr. 865-866). Dr. Boothe noted thenar atrophy to both hands. (Tr. 868). Dr. Boothe concluded, "[carpal tunnel syndrome] seems to severely limit her at present." (Tr. 869). On November 9, 2017, the VA offered a referral to a hand surgeon for bilateral carpal tunnel syndrome. Henley responded that she had seen a surgeon who recommended surgery, but she had refused. (Tr. 893-894, 10871088, 1256-1257, 1615-1616, 1741-1742). However, on December 12, 2017, a referral to an orthopedic surgeon was completed. (Tr. 951, 1460). On January 29, 2018, Henley reported having trouble holding on to objects due to bilateral wrist pain. (Tr. 872, 922).

On February 16, 2018, Henley saw Dr. Brian Claytor at the University Orthopaedic Clinic.

She reported chronic burning, tingling, and pain at a level of 9 out of 10 in both wrists. (Tr. 1384). On examination she had decreased sensation along the median nerve in each arm, diminished biceps reflex, triceps reflex, and brachioradialis reflex in each arm, and weak composite grip in each arm. (Tr. 1386). Dr. Claytor indicated her symptoms had not improved significantly with nonoperative care. He recommended carpal tunnel release. (Tr. 1387). On August 9, 2018, occupational therapy was ordered. (Tr. 1949-1950). On August 14, 2018, she had occupational therapy, with splints issued and a foam ball for home exercises. (Tr. 1951, 2004).

The ALJ justified only limiting Henley to "frequently reach[ing] overhead with her bilateral extremities, and could frequently handle, finger, and feel with the bilateral upper extremities" as follows: "At the Tuscaloosa Veterans Administration Medical Center, the claimant was approved for Telehealth, at which time it was noted that the claimant met the criteria, including for manual dexterity (Exhibit CDR-B13F). A limitation to only frequent handling and fingering takes into account the limitation due to carpal tunnel syndrome." (Tr. 23).

Review of the Telehealth approval shows manual dexterity defined as, "able to push monitor keys." (Tr. 967). "Frequent" is defined by the Social Security Administration as occurring from one third to two thirds of the workday. Social Security Ruling (SSR) 83-10. Of course, Telehealth appointments necessarily occur intermittently and for brief periods of time. They do not require reaching overhead.  The ability to push monitor keys on an infrequent basis does not show an ability to frequently handle and finger on an ongoing basis, for one-to-two thirds of an eight-hour day, five days a week, as anticipated by SSR 96-8p.  The ALJ's RFC finding that Henley can "frequently reach overhead with her bilateral extremities, and could frequently handle, finger, and feel with the bilateral upper extremities" (tr. 20-21) is not supported by substantial evidence. On remand, the ALJ should reevaluate the impact Henley's carpel tunnel has on her ability to

work.

### 3. Post-Traumatic Stress Disorder

Since March 1, 2018, the ALJ found Henley has had the medically determinable impairment of post-traumatic stress disorder ("PTSD") related to her military service. (Tr. 17). Henley contends the ALJ failed to properly consider the severity of her PTSD, specifically pointing to the ALJ's reliance on Dr. Patricia Pilkinton's opinion that Henley's presentation was "inconsistent and suggestive of secondary gain issues" (consciously using sickness for gain). (Doc. 13 at 11).

In discrediting many of Henley's PTSD-related complaints, the ALJ does cite records from Dr. Pilkinton,[3] a psychiatrist at the VA Medical Center, as noting that Henley's presentation was "inconsistent and suggestive of secondary gain issues" (consciously using sickness for gain). (Tr. 22, 1007). This encounter occurred on April 12, 2016, almost two years before the date the ALJ determined Henley to be no longer disabled. (Tr. 1000-07). Additionally, while it could be reasonable for the ALJ to acknowledge that Dr. Pilkinton thought Henley was exaggerating her impairments and give weight on that evidence, this, standing alone, does not justify ignoring other medical evidence. Notably, at the same appointment in April 2016, Dr. Pilkinton increased Henley's sertraline (for depression) and trazodone (for depression and/or anxiety). (Tr. 1004-07).

That's not all. On October 26, 2017 (a year-and-a-half after the Pilkinton evaluation and closer to the relevant time period), Henley underwent a Compensation and Pension examination. (Tr. 1375-81). Clinical Psychologist Dr. Julie Woosley noted Henley met all the criteria for chronic PTSD, and Henley continued treatment for PTSD throughout 2017 and 2018. (*Id.*). Dr.

---

[3] Dr. Pilkinton reviewed notes from Nurse Practitioner Sharon Sloup, but she did not perform the examination. (Tr. 1315-23).

Woosley indicated Henley's diagnosis caused "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." (Tr. 1377). Dr. Woosley noted Henley's diagnoses included the following symptoms: depressed mood, suspiciousness, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, mild memory loss, such as forgetting names, directions or recent events, flattened affect, disturbances of motivation or mood, difficulty in establishing and maintaining effective work and social relationships, and suicidal ideations. (Tr. 1380-81). Henley shows numerous findings of depressed mood, isolation or tendency to stay to herself, anhedonia (inability to feel pleasure), memory deficits, and insomnia or sleep disturbance. (Tr. 876-878, 1040-1043, 1070, 1085, 1100-1105, 1152, 1160, 1182, 1171, 1174, 1176, 1178, 1181, 1183, 1185, 1187-1189, 1192, 1210, 1213, 1219, 1224, 1230, 1236, 1321, 1376-1381, 1515, 1547-1549, 1552, 1559, 1597, 1613, 1634-1637, 1700, 1781, 1788, 1793-1794, 1799, 1805, 1810, 1826, 1837, 1843, 1845, 1847, 1850, 1852, 1855, 1857, 1859, 1861, 1863, 1868, 1874, 1900-1901, 1926, 1980, 2070-2071, 2074, 2106).

The ALJ explained the additional limitations in Henley's RFC are attributable to the newly identified impairment, PTSD. (Tr. 22). The ALJ continued that "[w]ith impairment in her ability to interact with others and concentrate, persist or maintain pace, [Henley] should have only occasional work-related interaction with supervisors, coworkers and the general public and could only be expected to understand, remember, and carry out simple instructions and tasks for two-hours blocks of time." (*Id.*).

Previously in the decision, the ALJ assessed whether Henley met Listing 12.15 for trauma and stressor related disorders, determining she did not. (Tr. 18-20). During this analysis the ALJ considered the opinion from Dr. Samuel D. Williams, a State agency psychiatric consultant. (Tr.

14

19).  According to the ALJ, on March 13, 2018, Dr. Williams opined that Henley had moderate limitations with regard to understanding, remembering, or applying information.  (*Id.*).  The ALJ found this opinion "less persuasive" insofar as it was inconsistent.  (*Id.*).  Specially, the ALJ points to records from the VA where Henley was assessed with mild memory loss on May 21, 2018.  (*Id.*) (citing 2027-34).  The ALJ then references non-psychiatric VA records from January 29, 2018, where it was noted that Henley had no memory loss, confusion, or insomnia.  (Tr. 19) (citing tr. 874-75).  Notably, this was not a psychiatric appointment, but an appointment to address back and carpal tunnel pain.  (Tr. 874-75).  Based on these records, and the fact that Henley "demonstrated an ability to coordinate her care at the [VA] and communicate her needs in a medical setting[,]" the ALJ found Henley has a "mild limitation" with regard to understanding, remembering, or applying information.  (Tr. 19).  Only later in the decision, does the ALJ acknowledge that Henley's mother reminds her of her medical appointments.  (Tr. 20).

With regard to interacting with others, the ALJ notes Dr. Williams concluded Henley had moderate limitations.  (Tr. 19).  The ALJ also found Henley has moderate limitations with regard to interacting with others and stated that based on her PTSD and lack of sleep, "she would be expected to have difficulty interacting with others."  (Tr. 19).

With regard to concentrating, persisting, and maintaining pace, the ALJ states Dr. Williams concluded Henley had moderate limitations.  (Tr. 20).  The ALJ cites records from November 2017 and April 2016, to find a moderate limitation with regard to concentrating, persisting, and maintaining pace.

It is axiomatic that this Court does not decide facts anew, reweigh evidence, or substitute its own judgment for that of the Commission.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (2005).  The relevant inquiry is not whether some evidence might support greater limitations, but whether

substantial evidence supports the ALJ's decision.  *Moore v. Barthart*, 405 F.3d 1208, 1213 (11th Cir. 2005).  However, based on Henley's PTSD, the ALJ limited Henley to only occasional work-related interaction with supervisors, coworkers, and the general public and further stated she could only be expected to understand, remember, and carry out simple instructions and tasks for two-hour blocks of time.  (Tr. 22).  "Occasional" means occurring from very little to one-third of the time.

The ALJ erred in reaching her findings related to Henley's PTSD.  As it relates to Henley's ability to interact with others, the ALJ only summarily cites Dr. Williams' conclusion and then appears to rely heavily on Dr. Pilkinton's April 2016 "secondary gain issues" statement to discredit Henley's complaints.  (Tr. 19, 22).  While the undersigned will not second-guess the ALJ, there is hardly sufficient analysis to complete the substantial evidence review.  Even if Henley's condition is not as bad as she described in 2016, that does not mean it could not be disabling.  There are ample psychiatric records from multiple visits to the VA in 2017 and 2018, that address Henley's PTSD and how it impacts her ability to interact with others.  The ALJ does not cite any of these records in determining Henley has only moderate limitations with regard to interacting with others based on her PTSD and lack of sleep and points to no records when she formulated this part of the RFC. (Tr. 19-22).  As noted above, the ALJ gives the general disclaimer that she "did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 C.F.R. 404.1520c."  (Tr. 23).  Of course, the administrative record in this case exceeds 2000 pages.  The undersigned does not expect a full recitation of the evidence; however, at least some reference to the actual medical evidence or treating physician notes would be expected.

Even if this alone was not cause for error, the lack of analysis related to how Henley's PTSD impacts her ability to interact with others combined with the above-described error related

Henley's migraines and migraine treatment is sufficient to warrant remand.  On remand, the ALJ should consider the temporally relevant psychiatric record evidence related to Henley's PTSD and how it impacts her ability to work.

## VI. Conclusion

There is no doubt Henley's condition, particularly related to her Stage 3 breast cancer and associated treatment, has improved, as evidenced in Dr. Hinton's May 2018 records.  However, in several ways articulated above, the remainder of the ALJ's decision does not adequately take into account Henley's other impairments and their impact on her ability to work -- specifically, Henley's migraines, service-connected PTSD, and carpal tunnel syndrome.  For these reasons, the ALJ's RFC finding and conclusion that Henley is not disabled lacks substantial evidence.  On remand, the ALJ should consider Dr. Potts' treatment records (for migraines and other neurological issues) and reconsider how Henley's PTSD impacts her ability to interact with others (particularly considering relevant psychiatric records) as well as how Henley's carpel tunnel syndrome impacts her ability to use her hands.

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security fnding Henley no longer disabled is **REVERSED** and **REMANDED** to be reconsidered as consistent with this memorandum opinion.  A separate order will be entered.

DONE this 27th day of September, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE